1

**BEALL & BURKHARDT**
WILLIAM C. BEALL, STATE BAR NO. 97100
ERIC W. BURKHARDT, STATE BAR NO. 132812
1114 STATE STREET
LA ARCADA BUILDING, SUITE 200
SANTA BARBARA, CALIFORNIA, 93101
(805) 966-6774, FAX (805) 963-5988

2

3

4

5

Counsel for Debtor in Possession

6

7

## UNITED STATES BANKRUPTCY COURT

8

## CENTRAL DISTRICT OF CALIFORNIA

9

10

In re

11

DAZ Vineyards, LLC,

12

Debtor.

| | |
|---|---|
| ) | Bk. No. 9:10-bk-10689-RR |
| ) | Chapter 11 |
| ) | |
| ) | **MOTION AUTHORIZING COMPROMISE** |
| ) | **OF CONTROVERSY WITH POINTS AND** |
| ) | **AUTHORITIES** |
| ) | |

13

14

15

Date:  July 13, 2010
Time:  10:00 a.m.
Place: 1415 State Street
       Courtroom 201
       Santa Barbara, CA 93101

16

17

18

19

20

Debtor in possession DAZ Vineyards, LLC hereby requests from the Court an Order Authorizing Compromise of Controversy as follows:

21

22

23

24

25

26

Prior to the filing of the case, the debtor entered into a transaction with Thomas Ole Dial, John Storer, Bill Jeffries, and Thomas Jeffries (collectively "secured creditors"). The transaction was styled a sale of wine to secured creditors with the right of the debtor to repurchase the wine. Possession of the wine was transferred to secured creditors.

27

28

1

1    The debtor contends that the transaction was not a true sale,

2    but was a disguised security agreement.  Secured creditors contest

3    this characterization.  Treatment of the transaction as a security

4    instrument would lead to different treatment in the Chapter 11

5    case, as well as introducing other possible disputes such as

6

7    whether the transaction violated the usury laws.

8    Rather than litigate with secured creditors, the debtor has

9    negotiated an agreement that should permit the debtor to

10    profitably sell the wine in secured creditors' possession, permit

11    payment to secured creditors however characterized, and permit the

12    debtor to continue toward confirmation of a Chapter 11 Plan.  That

13    agreement is memorialized in the "Purchase Agreement" attached

14    hereto as Exhibit A.

15

16    ### POINTS AND AUTHORITIES

17    The court may approve a compromise if it is in the best

18    interest of the estate and its creditors.  Courts weigh and

19    consider the following criteria in striking the balance between

20    the value of compromise and the amount of the claim in order to

21    determine whether the settlement is in the best interest of the

22    creditors:  (1) the probability of success in the litigation; (2)

23    the likely difficulties in collection; (3) the complexity, expense

24    (including attorney's fees, court costs, and discovery),

25    inconvenience and delay that prosecuting the case will entail; and

26    the interests of the creditors and proper defense to the

27    reasonable views they have on the matter (In re A&C Properties,

28    784 F.2d 137,1381 (9th Cir.) cert. denied, 479 U.S. 854, 107 S.

Ct. 189 (1986); accord Woodson v. Fireman's Fund Insur. Co. (In re Woodson) 839 F.2d 610, 620 (9th Cir. 1988).

In a matter such as this, the court should determine whether the debtor in possession has exercised appropriate business judgment in the decision to compromise. In this case, there is a real dispute concerning characterization of the transaction. The scope of the dispute, however is limited. Whether the original transaction is treated as a sale with a right to repurchase or a security device, secured creditors have perfected their claim on 1603 cases of the debtor's wine, either through purchase or through possession. Thus repayment of the purchase price (or principal loaned) will be required in either event.

The remaining disputes concern whether the wine could still be repurchased, and the running of an appropriate interest rate for secured creditors. The proposed settlement permits sale of the wine by the debtor, and compromises the appropriate payment between the debtor's contention that due to the usurious nature of the transaction no interest is owed and the creditors' extrapolation of return based upon the original agreement.

The debtor believes that the attached "Purchase Agreement" provides a framework for sale by the debtor of the 1603 cases of wine in a profitable manner for the estate. These sales will aid the reorganization effort. While it is possible that litigation with the secured creditors could eventually lead to a better result, it is possible that wine sales will be halted during the

3

1  time of the dispute, and the result of litigation is uncertain.

2  Furthermore, there will be undeniable cost to the estate from such

3  litigation, which will necessarily make reorganization more

4  difficult.

5                          III.   CONCLUSION

6      FOR THE FOREGOING REASONS debtor in possession DAZ Vineyards,

7  LLC requests that this court enter its order authorizing

8  settlement of the above described dispute as is set forth herein.

9                                  Respectfully submitted,

10

11

12  Dated:    June 4, 2010         BEALL & BURKHARDT

13

14  By: _____
                          William  C.  Beall,  Counsel
15                        for DAZ Vineyards, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF CONSTANTINE ZAHOUDANIS

I, Constantine Zahoudanis, declare and state as follows:

1.    I am a principal of the debtor in possession in this matter under Chapter 11. Each of the matters set forth below is stated of my personal knowledge and if called as a witness I could competently testify to each of them.

2.    Prior to the filing of the case, the debtor entered into a transaction with Thomas Ole Dial, John Storer, Bill Jeffries, and Thomas Jeffries (collectively "secured creditors").  The transaction was styled a sale of wine to secured creditors with the right of the debtor to repurchase the wine.  Possession of the wine was transferred to secured creditors.

3.    The debtor contends that the transaction was not a true sale, but was a disguised security agreement.  Secured creditors contest this characterization.  Treatment of the transaction as a security instrument would lead to different treatment in the Chapter 11 case, as well as introducing other possible disputes such as whether the transaction violated the usury laws.

4.    Rather than litigate with secured creditors, the debtor has negotiated an agreement that should permit the debtor to profitably sell the wine in secured creditors' possession, permit payment to secured creditors however characterized, and permit the

debtor to continue toward confirmation of a Chapter 11 Plan. That agreement is memorialized in the "Purchase Agreement" attached hereto as Exhibit A.

5.    In this case, there is a real dispute concerning characterization of the transaction. The scope of the dispute, however is limited. Whether the original transaction is treated as a sale with a right to repurchase or a security device, secured creditors have perfected their claim on 1603 cases of the debtor's wine, either through purchase or through possession. Thus repayment of the purchase price (or principal loaned) will be required in either event.

6.    The remaining disputes concern whether the wine could still be repurchased, and the running of an appropriate interest rate for secured creditors. The proposed settlement permits sale of the wine by the debtor, and compromises the appropriate payment between the debtor's contention that due to the usurious nature of the transaction no interest is owed and the creditors' extrapolation of return based upon the original agreement.

7.    The attached "Purchase Agreement" should provide a framework for sale by the debtor of the 1603 cases of wine in a profitable manner for the estate. These sales will aid the reorganization effort. While it is possible that litigation with the secured creditors could eventually lead to a better result, it is possible that wine sales will be halted during the time of the dispute, and the result of litigation is uncertain. Furthermore,

6

1  there will be undeniable cost to the estate from such litigation,

2  which will necessarily make reorganization more difficult

3      I declare the foregoing is true under penalty of perjury.

4

5  Dated: _____5/25_____ , 2010

6                                        Constantine Zahoudanis

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

## PURCHASE AGREEMENT

This purchase agreement (this "Agreement") is entered into as of this 3rd day of May, 2010 by and between Thomas Ole Dial, John Storer, Bill Jeffries and Thomas Jeffries (individually, a "Seller", collectively the "Sellers") and DAZ Vineyards, LLC d/b/a Demetria Estate Winery ("DAZ", or the "Buyer"), who are sometimes hereinafter referred to individually as a "Party" and collectively as the "Parties" with respect to the following facts.

### RECITALS

WHEREAS, the Sellers have purchased 1,603 cases of wine consisting of 1,511 cases of 2007 Demetria Estate Pinot Noir and 92 cases of Demetria Estate Cuvee Sandra (the "Subject Wine");

WHEREAS, this Agreement shall set forth the terms and conditions under which Sellers shall agree to sell Subject Wine to Buyer and Buyer agrees to purchase Subject Wine from Sellers under the terms and conditions outlined below;

WHEREAS, the Sellers have appointed MezzCap Partners, LLC as their agent ("MezzCap", or the "Sellers' Agent") to act as custodian of the Subject Wine and carry out certain provisions on behalf of the Sellers as required under this Agreement; and

WHEREAS, this Agreement memorializes the terms of the purchase arrangement by and between the Parties. To avoid any controversy or misunderstanding, the Parties have agreed that this Agreement shall conclusively establish the Parties' understanding and arrangement, and supersedes all prior negotiations, discussions arrangements or oral or written agreements of every nature.

NOW, THEREFORE, in consideration of the foregoing premises and the covenants, conditions, representations and warranties herein contained, the Parties hereto agree as follows:

### AGREEMENT

1. **PURCHASE PRICE.** Buyer can purchase the Subject Wine for a total purchase price of $245,000 (the "Total Purchase Price"), or in case increments of 12 bottles for $180.00 per case ("Case Purchase Price") of the Subject Wine.

2. **TERM OF AGREEMENT; EXTENSIONS.** This Agreement shall expire upon the earlier of: (i) the full payment of the Total Purchase Price; (ii) December 31, 2010 with 30 day extensions at the election of the Sellers; or (iii) the conversion of the DAZ Chapter 11 filing into a Chapter 7 filing.

3. **CASH PURCHASE PROCEDURES.**

   a. For cash sales of the Subject Wine, the Buyer agrees to purchase each case of the Subject Wine at the Case Purchase Price, which will be evidenced by a purchase order generated by DAZ (the "DAZ PO") indicating the number of cases of the Subject Wine and the Case Purchase Price.

Page 1

EXHIBIT A Page 8

b.     Upon receipt of the DAZ PO, the Sellers will generate a corresponding invoice (the "Sellers' Invoice"). All costs related the sale including, but not limited to: shipping, tax, storage out fees, transportation and other related costs shall be borne by DAZ. Any of these costs incurred by the Sellers in fulfilling a DAZ PO shall be included on the Sellers' Invoice.

c.     The Sellers will release the Subject Wine to DAZ upon verification of payment which will be remitted directly to the Sellers' Agent. All Case Purchase Price amounts received under this section 3 shall be applied towards the Total Purchase Price.

4.     **CREDIT PURCHASE PROCEDURES.**

a.     The Sellers agree to provide credit terms to DAZ on a case-by-case basis and reserve the right to approve any and all credit terms and conditions related to the Subject Wine. In the event that DAZ desires to sell the Subject Wine along with other DAZ varietals to a customer and extend credit terms to that customer, DAZ agrees to segregate all documentation related to the Subject Wine with its underlying customers (a "DAZ Customer"), including all DAZ Customer purchase orders ("DAZ Customer Purchase Order") and all DAZ Customer invoices ("DAZ Customer Invoice").

b.     To initiate a credit sale with a DAZ customer, DAZ must submit information about the DAZ Customer and the terms of the credit sale to the Sellers' Agent for approval.

c.     For credit sales of the Subject Wine, the Buyer agrees to purchase each case of the Subject Wine at the Case Purchase Price, which will be evidenced by a purchase order generated by DAZ (the "DAZ PO") indicating the number of cases of the Subject Wine and the Case Purchase Price. DAZ agrees to attach the underlying DAZ Customer Invoice to the DAZ PO and the DAZ PO will reflect the assignment of the DAZ Customer Invoice.

d.     Upon receipt of the DAZ PO, the Sellers will generate a corresponding Sellers' Invoice. All costs related the sale including, but not limited to: shipping, tax, storage out fees, transportation and other related costs shall be borne by DAZ. Any of these costs incurred by the Sellers in fulfilling a DAZ PO shall be included on the Sellers' Invoice.

e.     The Sellers will release the Subject Wine to DAZ upon the valid assignment by DAZ to the Sellers of the DAZ Customer Invoice as collateral for the underlying DAZ PO.

f.     DAZ agrees to remit payment of all DAZ Customer Invoices to the Sellers' Agent upon receipt of payment from its customer. DAZ further agrees to provide payment to the Sellers for any portion of the DAZ Customer Invoice that remains unpaid by its customer: (i) 60 days from the date of the DAZ Customer Invoice; (ii) in the event that its customer is unable to pay the DAZ Customer Invoice; or (iii) 30 days prior the term of this Agreement.

g.     The Sellers will release the assignment of the DAZ Customer Invoice when the Sellers' Agent receives full payment related to the corresponding Sellers' Invoice.

h.     All Case Purchase Price amounts received under this section 4 shall be applied towards the Total Purchase Price.

5.    **HENRY WINE GROUP CONSIGNMENT PURCHASE PROCEDURES.**

   a.    The Sellers agree to provide terms to DAZ on a case-by-case basis and reserve the right to approve any and all consignment and related credit terms and conditions related to the consignment sales of the Subject Wine to the Henry Wine Group ("HWG"). In the event that DAZ desires to sell the Subject Wine along with other DAZ varietals to HWG and extend credit terms to HWG, DAZ agrees to segregate all documentation related to the Subject Wine with HWG, including the HWG consignment lot purchase order ("HWG-CPO") and the HWG purchase order ("HWG-PO").

   b.    To initiate a consignment sale to HWG, DAZ must submit information about terms of the consignment sale to the Sellers' Agent for approval.

   c.    The Buyer agrees to purchase each case of the Subject Wine at the Case Purchase Price, which will be evidenced by a purchase order generated by DAZ (the "DAZ PO") indicating the number of cases of the Subject Wine and the Case Purchase Price. DAZ agrees to attach the underlying HWG-CPO to the DAZ PO and the DAZ PO will reflect assignment of the HWG-CPO.

   d.    Upon receipt of the DAZ PO, the Sellers will generate a corresponding Sellers' Invoice. All costs related the sale including, but not limited to: shipping, tax, storage out fees, transportation and other related costs shall be borne by DAZ. Any of these costs incurred by the Sellers in fulfilling a DAZ PO shall be included on the Sellers' Invoice.

   e.    The Sellers will release the Subject Wine to DAZ upon the valid assignment by DAZ to the Sellers of the HWG-CPO as collateral for the underlying DAZ PO.

   f.    For each sale of the Subject Wine to a HWG customer, HWG will issue its form of purchase order ("HWG-PO") to DAZ and DAZ will then immediately generate its form of invoice ("DAZ Customer Invoice") back to HWG to evidence the sale of the number of cases indicated on the HWG-PO. DAZ agrees to assign this DAZ Customer Invoice to the Sellers as collateral. DAZ will extend payment terms of no more than 30 days for each DAZ Customer Invoice generated from a HWG-PO that is related to the Subject Wine.

   g.    DAZ agrees to direct HWG to make joint payments related to the DAZ Customer Invoice of the Subject Wine as follows: (i) amounts related to the Case Purchase Price will be paid directly to the Sellers' Agent; and (ii) any amounts in excess of the Case Purchase Price will be paid directly to DAZ.

   h.    DAZ further agrees to provide payment to the Sellers for any portion of the DAZ Customer Invoice that remains unpaid: (i) 45 days from the date of the DAZ Customer Invoice to HWG; (ii) in the event that HWG is unable to pay the DAZ Customer Invoice; or (iii) 30 days prior the term of this Agreement.

   i.    HWG will send weekly inventory count of the Subject Wine held at its location to the Sellers' Agent.

   j.    The Sellers retain ownership of the Subject Wine sold under such consignment terms to the DAZ customer until the DAZ Customer Invoice has been paid in full at which time the Sellers will release the assignment of the DAZ Customer Invoice.

EXHIBIT A Page 10

k.    All Case Purchase Price amounts received under this section 5 shall be applied towards the Total Purchase Price.

6.    **SELLERS AGENT.** The Sellers consent to MezzCap receiving all cash payments and wire transfers received directly from DAZ, HWG and/or a DAZ customer on their behalf and then remitting to each Seller their pro-rata amount. Wire transfer instructions are included on Exhibit A to this Agreement.

7.    **ASSIGNMENT OF DAZ CUSTOMER INVOICES AND RECONCILIATION OF SUBJECT WINE.** The Sellers' Agent and a designee from DAZ will exchange on a weekly basis a master reconciliation schedule ("Master Schedule") prepared and maintained by the Sellers' Agent. The form of the Master Schedule is included on Exhibit B to this Agreement.

8.    **ACKNOWLEDGMENTS.** The Parties are executing this Agreement voluntarily and without any duress or undue influence. The parties have carefully read this Agreement and have asked any questions needed to understand its terms, consequences, and binding effect and fully understand them and have been given an executed copy. The parties have sought the advice of an attorney of their respective choice if so desired prior to signing this Agreement.

9.    **GOVERNING LAW AND VENUE.** This Agreement has been negotiated in, shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of California without giving effect to the principles of conflicts of law thereof. **THE PARTIES AGREE THAT ANY LEGAL ACTION OR PROCEEDING ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT SHALL BE BROUGHT IN FEDERAL COURT (OR STATE COURT IF FEDERAL COURTS ARE WITHOUT JURISDICTION) LOCATED IN THE CITY OF LOS ANGELES, STATE OF CALIFORNIA, UNITED STATES OF AMERICA.**

10.    **ENTIRE AGREEMENT; MODIFICATION.** This Agreement sets forth the entire agreement and understanding between the Parties relating to the subject matter herein and supersedes all prior discussions between the parties. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the Party to be charged.

11.    **SUCCESSORS AND PERMITTED ASSIGNS.** This Agreement shall be binding on the successors and permitted assigns of the Parties. This Agreement and any right or remedy or any duty or obligation arising hereunder shall not be assignable or delegable in whole or in part by either Party without the express prior written consent of the other Party hereto.

12.    **AMENDMENTS.** This Agreement may be amended or modified only by an instrument in writing duly executed by the Parties.

13.    **SEVERABILITY OF PROVISIONS.** Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction and which is material in implementing the intentions of the Parties shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions or affecting the validity or enforceability of any provision in any other jurisdiction.

EXHIBIT A Page 11

May 04 10 08:42a       DEMETRIA ESTATE                                                p.6

14.    **NOTICES.**  Notices will be sent to the addresses set forth below, unless either Party notifies the other of an address/number change in writing.

<u>If to Sellers or Sellers' Agent, addressed to:</u>

MezzCap Partners, LLC
1880 Century Park East, Suite 350
Los Angeles, CA 90067
Attention:     Mr. Brian D. MacDonald

Telephone:     (310) 279-5996
Facsimile:     (310) 861-1516
e-mail:        bmacdonald@mezzcapital.com

<u>If to DAZ Vineyards, addressed to:</u>

DAZ Vineyards, LLC d/b/a Demetria Estate Winery
6701 Foxen Canyon Road
Los Olivos, CA 93441
Attention:     Mr. John Zahoudanis
               Mr. Alexis Zahoudanis
Telephone:     (805) 686-2345/(805) 245-2235
Facsimile:     (805) 686-2522
e-mail:        john@demetriaestate.com
               alexiszah@gmail.com

Page 5

EXHIBIT A  Page 12

The undersigned has read this Agreement and by signing where indicated below agrees to be bound by its terms. This Agreement may be executed in counterparts with each counterpart serving as a duplicate original. Faxed signatures shall be deemed binding as originals until hard copies are in hand.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day and year first indicated above.

For and on behalf of,
**THE SELLERS**

By: _____
   Thomas Ole Dial

By: _____
   John Storer

By: _____
   Bill Jeffries

By: _____
   Tom Jeffries

For and on behalf of,
**DAZ VINEYARDS, LLC**

By: _____
John Zahoudanis, in his capacity as:
Manager, DAZ Vineyards, LLC
Manager, Centrium Associates, LLC

By: _____
   C. Alexis Zahoudanis, in his capacity as:
   Manager, DAZ Holdings, LLC
   Manager, Centrium Associates, LLC

The undersigned has read this Agreement and by signing where indicated below agrees to be bound by its terms. This Agreement may be executed in counterparts with each counterpart serving as a duplicate original. Faxed signatures shall be deemed binding as originals until hard copies are in hand.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day and year first indicated above.

For and on behalf of,
**THE SELLERS**

By: _____
    Thomas Ole Dial

By: _____
    John Storer

By: _____
    Bill Jeffries

By: _____
    Tom Jeffries

For and on behalf of,
**DAZ VINEYARDS, LLC**

By: _____
    John Zahoudanis, in his capacity as:
    Manager, DAZ Vineyards, LLC
    Manager, Centrium Associates, LLC

By: _____
    C. Alexis Zahoudanis, in his capacity as:
    Manager, DAZ Holdings, LLC
    Manager, Centrium Associates, LLC

The undersigned has read this Agreement and by signing where indicated below agrees to be bound by its terms. This Agreement may be executed in counterparts with each counterpart serving as a duplicate original. Faxed signatures shall be deemed binding as originals until hard copies are in hand.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day and year first indicated above.

For and on behalf of,
**THE SELLERS**

By: _____          By: _____
    Thomas Ole Dial                              John Storer


By: _____          By: _____
    Bill Jeffries                              Tom Jeffries


For and on behalf of,
**DAZ VINEYARDS, LLC**


By: _____          By: _____
    John Zahoudanis, in his capacity as:         C. Alexis Zahoudanis, in his capacity as:
    Manager, DAZ Vineyards, LLC                  Manager, DAZ Holdings, LLC
    Manager, Centrium Associates, LLC            Manager, Centrium Associates, LLC

The undersigned has read this Agreement and by signing where indicated below agrees to be bound by its terms. This Agreement may be executed in counterparts with each counterpart serving as a duplicate original. Faxed signatures shall be deemed binding as originals until hard copies are in hand.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day and year first indicated above.

For and on behalf of,
**THE SELLERS**

By: _____          By: _____
    Thomas Ole Dial                              John Storer


By: _____          By: _____
    Bill Jeffries                                  Tom Jeffries


For and on behalf of,
**DAZ VINEYARDS, LLC**


By: _____          By: _____
    John Zahoudanis, in his capacity as:          C. Alexis Zahoudanis, in his capacity as:
    Manager, DAZ Vineyards, LLC          Manager, DAZ Holdings, LLC
    Manager, Centrium Associates, LLC          Manager, Centrium Associates, LLC

The undersigned has read this Agreement and by signing where indicated below agrees to be bound by its terms. This Agreement may be executed in counterparts with each counterpart serving as a duplicate original. Faxed signatures shall be deemed binding as originals until hard copies are in hand.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the day and year first indicated above.

For and on behalf of,
**THE SELLERS**

By: _____          By: _____
    Thomas Ole Dial                           John Storer


By: _____          By: _____
    Bill Jeffries                              Tom Jeffries


For and on behalf of,
**DAZ VINEYARDS, LLC**

By: _____          By: _____
John Zahoudanis, in his capacity as:      C. Alexis Zahoudanis, in his capacity as:
Manager, DAZ Vineyards, LLC               Manager, DAZ Holdings, LLC
Manager, Centrium Associates, LLC         Manager, Centrium Associates, LLC

Page 6

# EXHIBIT A

## WIRE INSTRUCTIONS

MezzCap Partners, LLC

Wells Fargo Bank
433 North Camden Drive
Beverly Hills, California 90210
(310) 550-7181

| | |
|---|---|
| Account Name: | MezzCap Partners, LLC |
| Account Number: | 721-602-3619 |
| ABA routing number: | 121 000 248 |

EXHIBIT B

FORM OF MASTER SCHEDULE

| In re:<br>DAZ Vineyards, LLC | CHAPTER 11 |
| Debtor(s). | CASE NUMBER 9:10-bk-10689-RR |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is: 1114 State Street, Suite 200, Santa Barbara, CA 93101

A true and correct copy of the foregoing documents described **MOTION AUTHORIZING COMPROMISE OF CONTROVERSY WITH POINTS AND AUTHORITIES** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On 06/08/10 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:
Craig C Chiang   cchiang@buchalter.com
Brian D Fittipaldi   brian.fittipaldi@usdoj.gov
Gary M Kaplan   gkaplan@fbm.com
United States Trustee (ND)   ustpregion16.nd.ecf@usdoj.gov
Jason R Wolf   wolfj@hbdlawyers.com

II.  **SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On 06/08/10 I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on 06/08/10 I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

**Judge's Copy:**
Honorable Robin Riblet
United States Bankruptcy Court
Central District of California
1415 State Street
Santa Barbara, CA 93101

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 06/08/10 | Natalie A. Spilborghs | |
| --- | --- | --- |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                   **F 9013-3.1**